**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

SHIVA STEIN,                                            :
                                                        :
        Plaintiff,                       :   Civil Action No. 22-cv-7907
                                                        :
v.                                                      :   **COMPLAINT FOR VIOLATIONS OF**
                                                        :   **SECTIONS 14(a) AND 20(a) OF THE**
HILL INTERNATIONAL, INC., DAVID                         :   **SECURITIES EXCHANGE ACT OF**
SGRO, RAOUF S. GHALI, ARNAUD                            :   **1934**
AJDLER, PAUL EVANS, GRANT                               :
MCCULLAGH, JIM RENACCI, and SUSAN                       :   **JURY TRIAL DEMANDED**
STEELE,                                                 :
                                                        :
        Defendants.                      :

---------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against Hill International, Inc. ("Hill International or the "Company") and the members Hill International's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Hill International by affiliates of Global Infrastructure Solutions, Inc. ("Global Infrastructure").

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on September 14, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Liberty Acquisition Sub Inc. ("Merger Sub"), a wholly-owned subsidiary of Global Infrastructure, will merge with and into Hill International with Hill International surviving as a wholly-owned subsidiary of Global Infrastructure (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 7, 2022 (the "Merger Agreement"), each Hill International stockholder will receive $3.40 in cash (the "Merger Consideration") for each Hill International share owned.

3. As discussed below, Defendants have asked Hill International's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan Lokey") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Hill International's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.       This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.       Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.       Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's stock trades on the New York Stock Exchange, headquartered in this District, and because the Company's proxy solicitor, MacKEnzie Partners, Inc., is also headquartered in this District.

## PARTIES

9.       Plaintiff is, and has been at all relevant times, the owner of Hill International stocks and has held such stocks since prior to the wrongs complained of herein.

10.      Individual Defendant David Sgro has served as a member of the Board since August 2016 and is the Company's Chairman of the Board.

11.      Individual Defendant Raouf S. Ghali has served as a member of the Board since 2018 and is the Company's Chief Executive Officer.

12.      Individual Defendant Arnaud Ajdler has served as a member of the Board since 2018.

13.      Individual Defendant Paul Evans has served as a member of the Board since August 2016.

14.     Individual Defendant Grant McCullagh has served as a member of the Board since June 2019.

15.      Individual Defendant Jim Renacci has served as a member of the Board since 2020.

16.     Individual Defendant Susan Steele has served as a member of the Board since June 2019.

17.     Defendant Hill International is a Delaware corporation and maintains its principal offices at One Commerce Square, 2005 Market Street, 17th Floor, Philadelphia, Pennsylvania 19103.  The Company's stock trades on the NASDAQ Global Market under the symbol "CYBE."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

20.     Hill International provides project and construction management, and other consulting services primarily for buildings, transportation, environmental, energy, and industrial markets. The Company offers program management, project management, construction management, project management oversight, troubled project turnaround, staff augmentation, project labor agreement consulting, commissioning, estimating and cost management, and labor compliance and facilities management services. It primarily serves the United States federal, state, and local governments; other national governments; and the private sector. The Company operates in the Americas, Europe, the Middle East, Africa, and the Asia Pacific. Hill International was founded in 1976 and is headquartered in Philadelphia, Pennsylvania.

21.     On August 16, 2022, the Company announced the Proposed Transaction:

PHILADELPHIA and NEW YORK, Aug. 16, 2022 (GLOBE NEWSWIRE) -- Hill International, Inc. (NYSE:HIL) ("Hill" or the "Company"), delivering the infrastructure of change, announced today it has entered into a definitive merger agreement with Global Infrastructure Solutions Inc. (GISI), the largest privately owned construction manager in the commercial building, industrial and healthcare markets, and a leading project/construction manager in the environmental and public infrastructure sectors.

Under the terms of the merger agreement, GISI will commence an all-cash tender offer to acquire 100% of the issued and outstanding shares of Hill for $2.85 in cash per share, representing a premium of 62.8% to Hill's closing share price on August 16, 2022. Following the successful completion of the tender offer, GISI will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price, making Hill a privately held company under the GISI banner. The transaction values Hill International share capital at $173 million.

Hill International CEO Raouf Ghali said of the decision to join GISI: "Since our founding in 1976, Hill has grown into an industry-leading program, project, and construction management company. By joining the GISI family of companies, Hill will be well-positioned to continue to take advantage of the opportunities the industry offers while concurrently enhancing the quality of our client services thanks to GISI's focus on long-term success."

"We are confident this decision aligns with Hill's mission and brings value to our clients, our professionals, and our investors," Ghali added. "And I would personally like to thank our Board of Directors for their confidence and support in our management team during my tenure as CEO of our company."

GISI President and Chief Executive Officer Rick Newman stated: "Hill International has been a leader in the program, project, and construction management space for nearly 50 years, delivering infrastructure projects from New York City to Abu Dhabi and everywhere in between. Their uniqueness as a for-fee-only management firm, combined with their technical and managerial expertise, makes the company a welcome addition to the GISI family. We're excited to bring aboard Raouf and the entire Hill team."

The transaction was unanimously approved by Hill's Board of Directors.

The transaction is expected to close in the fourth quarter of 2022, subject to satisfaction of certain conditions, including the tender of shares representing at least a majority of the total number of Hill's outstanding shares, receipt of required antitrust clearance, and other customary conditions. Engine Capital, which holds approximately 10% of the common shares outstanding, has agreed to tender their shares in the offering. Closing of the transaction is not subject to a financing condition. The merger agreement contemplates that the parties may elect to effectuate the transaction as a one-step merger, in which case Hill would seek stockholder approval of the transaction, instead of as a tender offer followed by a second-step merger. Upon completion of the transaction, Hill's shares will no longer trade on the New York Stock Exchange.

Hill was assisted on the transaction by financial advisor Houlihan Lokey and legal advisor Duane Morris LLP. GISI was assisted on the transaction by financial advisor UBS Investment Bank and legal advisor Cooley LLP.

* * *

22.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Hill International's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

23.     On September 14, 2022, Hill International filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

_Omissions and/or Material Misrepresentations Concerning Financial Projections_

24.     The Proxy Statement fails to provide material information concerning financial projections by Hill International management and relied upon by Houlihan Lokey in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Houlihan Lokey with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Hill International management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." _In re Netsmart Techs., Inc. S'holders Litig._, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA and Adjusted EBITDA, but fails to provide line items used to calculate the metrics **_and/or_** a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26.     In addition, the Projections fails to include the Company's projected after-tax unlevered free cash flows that were used in Houlihan Lokey's _Discounted Cash Flow Analysis_.

27.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

_Omissions and/or Material Misrepresentations Concerning Financial Analyses_

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

30.     With respect to Houlihan Lokey's *Selected Companies Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each company selected for the analysis.

31.     With respect to Houlihan Lokey's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each transaction selected for the analysis.

32.     With respect to Houlihan Lokey's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the projected after-tax unlevered free cash flows for the Company; (ii) the terminal values for Hill International; (iii) the inputs and assumptions underlying the use of perpetuity growth rate range of 0.0% to 2.0%; (iv) the inputs and assumptions underlying the use of the range discount rates of 15.0% to 17.0%; (v) the Company's net debt, cash, and the estimated present value of receivables from a client in Libya.

33.     The Proxy Statement fails to disclose the aggregate fee that the Company will pay Houlihan Lokey for its services in connection with the Proposed Transaction.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.    Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.    Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.   Defendants were

negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

40.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Hill International within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Hill International, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Hill International, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Hill International, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 15, 2022                         **MELWANI & CHAN LLP**

                                    By:  */s/ Gloria Kui Melwani*
                                         Gloria Kui Melwani (GM5661)
                                         1180 Avenue of the Americas, 8th Fl.
                                         New York, NY 10036
                                         Telephone: (212) 382-4620

Email: gloria@melwanichan.com

*Attorneys for Plaintiff*